*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  November 3, 2016                522520
_____

TOMPKINS FINANCIAL CORPORATION,
                    Respondent,

        v                              MEMORANDUM AND ORDER

JOHN M. FLOYD & ASSOCIATES,
    INC.,
                    Appellant.
_____


Calendar Date:  September 6, 2016

Before:  Peters, P.J., McCarthy, Lynch, Rose and Clark, JJ.

_____


        Menter, Rudin & Trivelpiece, PC, Syracuse (Mitchell J. Katz
of counsel), for appellant.

        Harris Beach, PLLC, Syracuse (David M. Capriotti of
counsel), for respondent.

_____


Lynch, J.

        Appeal from an order of the Supreme Court (Mulvey, J.),
entered October 2, 2015 in Tompkins County, which granted
plaintiff's motion for, among other things, summary judgment.

        Plaintiff is the parent company of a number of banks.  In
August 2011, plaintiff and defendant entered into an agreement
wherein defendant agreed to provide consulting services to help
plaintiff maximize the income earned through, among other things,
its overdraft program.  Pursuant to the agreement, the parties
agreed that defendant would provide its services on a contingency

basis and that its fee would be based on the amount of income earned above a baseline amount that was to be established by defendant. Plaintiff paid a retainer fee and, in October 2011, plaintiff agreed to defendant's preliminary baseline amount, subject to certain adjustments. Thereafter, defendant engaged in its contractually requisite analysis and recommended that plaintiff make certain changes to its overdraft program. In February 2012, defendant proposed and plaintiff accepted a baseline that was calculated based on plaintiff's response to defendant's recommendations. Indisputably, plaintiff never experienced the anticipated income increase.

In June 2012, defendant advised that the February 2012 baseline was incorrect and proposed that it be decreased. After the parties were unable to agree to a revised baseline, plaintiff commenced this action seeking rescission of the agreement and a return of the $25,000 retainer payment. Defendant asserted counterclaims for, among other things, breach of contract, unjust enrichment and reformation. Following joinder of issue and some discovery, Supreme Court granted plaintiff's motion for summary judgment on its claim for a declaratory judgment and for dismissal of the counterclaims. Defendant now appeals.

The general, well-settled rule with regard to contract interpretation is that an agreement "is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (IDT Corp. v Tyco Group, S.A.R.L., 13 NY3d 209, 214 [2009] [internal quotation marks and citations omitted]). Unless we find that a term of the agreement is ambiguous, extrinsic evidence is not admissible to aid its interpretation (see Schron v Troutman Sanders LLP, 20 NY3d 430, 436 [2013]). Further, while "a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable" (Joseph Martin, Jr., Delicatessen v Schumacher, 52 NY2d 105, 109 [1981]), "it is also

plain that all the terms contemplated by the agreement need not be fixed with complete and perfect certainty for a contract to have legal efficacy" (Kolchins v Evolution Mkts., Inc., 128 AD3d 47, 61 [2015]).

Here, the agreement obligated defendant to install an overdraft program that conformed to all applicable laws and regulations. Further, defendant agreed to analyze plaintiff's accounts and make recommendations that would, ideally, maximize plaintiff's overdraft income. Payment for defendant's services was agreed to be on a contingency basis – that is, defendant would bill plaintiff a percentage of the "monthly quantified net increase in non-interest income and expenses related to [insufficient funds] and overdraft income" (hereinafter lift). The increases were calculated against a "baseline," established by calculating the "net average existing [insufficient funds] and [overdraft] revenue" earned from eligible checking accounts during a "base period" using historical data. The agreement provided that, once the baseline was established, the program would run for 60 days before plaintiff would be billed for any increased revenue.

Indisputably, no lift was realized during the 60 days following the proposed February 2012 baseline. The issue between the parties appears to stem from the data used to develop the February 2012 baseline, an error not discovered until September 2012. The parties agree that during the baseline period, plaintiff's banks were not compliant with certain regulations regarding the order that payments should be posted to account balances. When defendant attempted to replicate compliance using the historical data provided by plaintiff, it posted the debits to incorrect account balances.[1] Defendant now claims that the

---

[1] Plaintiff provided a report generated after the close of business showing amounts for both the "current balance" and "avail[able] bal[ance] for [payment]" for each listed account. Defendant, which was trying to analyze and reapply the historical

September 2012 baseline was the correct baseline and that, if it were applied, it would be evident that plaintiff actually realized an approximately $3,000,000 lift. Plaintiff did not agree to the revised baseline amounts proposed in June or September 2012 and, by its motion, sought a declaration that the contract was terminated, that it owed no money to defendant and that it was entitled to a refund of the retainer.

Supreme Court determined that, because the baseline was an indefinite material term, the agreement was unenforceable as a "mere agreement to agree" (Joseph Martin, Jr., Delicatessan v Schumacher, 52 NY2d at 109). We do not agree. "[W]here it is clear from the language of an agreement that the parties intended to be bound and there exists an objective method for supplying a missing term, the court should endeavor to hold the parties to their bargain. Striking down a contract as indefinite and in essence meaningless is at best a last resort" (Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d 88, 91 [1991] [internal quotation marks and citations omitted]; see Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 483 [1989], cert denied 498 US 816 [1990]). If, "at the time of agreement the parties have manifested their intent to be bound, a price term may be sufficiently definite if the amount can be determined objectively without the need for new expressions by the parties; . . . for example, [the price term might] be . . . ascertained by reference to an extrinsic event" (Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d at 483; see Seton

_____

data as if plaintiff had been compliant, asked which amount was the beginning balance used for posting payments. Plaintiff advised that it was the latter. Defendant interpreted that to mean that the "available balance for payment" was the beginning balance on the day of the report, while, in reality, because the report was generated after the close of business, it was the beginning balance available for the next day. Consequently, the baseline amount was based on a flawed application of the data.

Health at Schuyler Ridge Residential Health Care v Dziuba, 127
AD3d 1297, 1298-1299 [2015]). Here, the parties' conduct evinced
that they intended to be bound by the agreement and, in our view,
the baseline could be ascertained with reference to an extrinsic
event, that is, defendant's calculation derived from the existing
historical data (see Village of Lansing v Triphammer Dev. Co.,
193 AD2d 919, 920-921 [1993]). Accordingly, we find that the
agreement was enforceable.

Turning to plaintiff's motion for summary judgment, the
clear and unambiguous language of the contract provides that,
"[i]n any event, if the baseline is not mutually agreed upon by
both [plaintiff and defendant], [the agreement would] be
considered terminated and no longer in full force and effect,
subject to [plaintiff] paying travel and reasonable out of pocket
expanses incurred by [defendant], and [defendant] shall promptly
return the $25,000 retainer payment." While the evidence
demonstrates that the October 2011 baseline was agreed to, the
agreement was subject to further adjustment. Plaintiff claims
that it agreed to the February 2012 adjusted baseline, but
defendant rescinded that baseline and proposed two more, neither
of which were agreed to by plaintiff. Frank Fetsko, plaintiff's
executive vice-president, submitted an affidavit confirming that
if the September 2012 baseline had been proposed earlier,
plaintiff would not have accepted it. Indisputably, there was
never an agreement with regard to the baseline. Accordingly, the
plain and unambiguous language of the agreement is prima facie
proof of plaintiff's entitlement to summary judgment (see
Heritage Springs Sewer Works, Inc. v Boghosian, 61 AD3d 1038,
1041 [2009]).

Defendant now argues that once plaintiff agreed to the
October 2011 baseline, plaintiff waived its right to terminate
the agreement. As stated, however, the parties never agreed to a
defined baseline. Moreover, because defendant did not plead the
affirmative defense of waiver, defendant is precluded from
raising this defense (see CPLR 3018; McIntosh v Niederhoffer,

Cross & Zeckhauser, 106 AD2d 774, 775 [1984], lv denied 64 NY2d 608 [1985]).

We further find that Supreme Court properly dismissed defendant's first and second counterclaims for reformation and damages. In order to support a claim for reformation based on a mistake, defendant has the burden of establishing, "by clear and convincing evidence, that the writing in question was executed under mutual mistake or unilateral mistake coupled with fraud" (Timber Rattlesnake, LLC v Devine, 117 AD3d 1291, 1292 [2014] [internal quotation marks and citation omitted], lv denied 24 NY3d 904 [2014]). Defendant must "show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties" (George Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 219 [1978]; see Rosen Auto Leasing, Inc. v Jacobs, 9 AD3d 798, 800 [2004]).

Here, the parties did not make a mistake with regard to the meaning or interpretation of their agreement. Rather, defendant contends that the parties mistakenly agreed to the October 2011 baseline calculation. As stated, however, the record confirms that the October 2011 agreement was a preliminary one, made with the knowledge that it was subject to adjustment. Indisputably, it was defendant's contractual obligation to complete the calculation and, as set forth above, plaintiff was under no contractual obligation to accept the calculation. In our view, it is immaterial whether the adjusted February 2012 calculations were based upon a mistake because defendant rejected them and recalculated the baseline. The parties then never agreed to the readjusted calculations. To hold otherwise would require us to rewrite the agreement as obligating plaintiff to accept the proposed baseline — an interpretation in contravention of the express terms of the agreement. Because defendant raises no material factual questions warranting a trial and because we must enforce the plain and unambiguous terms of the agreement as written (see Maines Paper & Food Serv., Inc. v Pike Co., Inc., 137 AD3d 1366, 1368 [2016]), we find that Supreme Court properly

granted plaintiff's motion for summary judgment on its cause of action for a declaratory judgment and for dismissal of defendant's counterclaims for reformation, damages upon such reformation and breach of contract.

Supreme Court also properly dismissed defendant's third counterclaim seeking damages based on unjust enrichment. A successful claim for unjust enrichment exists where a party is "enriched at [the claiming party's] expense and . . . it is against equity and good conscience to permit the [enriched party] to retain what is sought to be recovered" (Silipo v Wiley, 138 AD3d 1178, 1180 [2016] [internal quotation marks and citation omitted]). "A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment" (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388 [1987] [citations omitted]). Accordingly, a party cannot recover damages for unjust enrichment based on conduct or events governed by a written agreement (see Simkin v Blank, 19 NY3d 46, 55 [2012]). Here, we have determined that the agreement was valid and enforceable and defendant seeks to change the terms of the agreement to allow it to unilaterally impose a baseline calculation and to recover sums ostensibly due upon such baseline. This remedy would contradict the express terms of the agreement, and the existence of the valid, enforceable agreement precludes any such recovery based on quasi contract and unjust enrichment (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d at 388; Mascorp, Inc. v United States Fid. & Guar. Co., 122 AD3d 1195, 1196-1197 [2014]; State of New York v Industrial Site Servs., Inc., 52 AD3d 1153, 1161 [2008]).

Supreme Court also properly dismissed defendant's counterclaim for breach of the covenant of good faith and fair dealing. This covenant, implied in all contracts in this state, "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (511 W. 232nd

Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002] [internal quotation marks and citations omitted]).  "[T]he implied obligation is only in aid and furtherance of other terms of the agreement of the parties" (Trump on the Ocean, LLC v State of New York, 79 AD3d 1325, 1326 [2010] [internal quotation marks and citation omitted], lv dismissed and denied 17 NY3d 770 [2011]; see Fahs Constr. Group, Inc. v State of New York, 123 AD3d 1311, 1312 [2014], lv denied 25 NY3d 902 [2015]).  Defendant does not cite any applicable, supporting provision of the agreement and, in contrast, we have concluded that plaintiff was expressly permitted to reject the baseline.  Accordingly, there is no basis to claim that plaintiff breached the covenant of good faith and fair dealing (see Fahs Constr. Group, Inc. v State of New York, 123 AD3d at 1312; Rooney v Slomowitz, 11 AD3d 864, 867 [2004]).  Finally, since Supreme Court did not make a declaration, we must modify the order accordingly.

We have considered the parties' remaining contentions and, in light of the foregoing, find them to be either moot or without merit.

Peters, P.J., McCarthy, Rose and Clark, JJ., concur.


ORDERED that the order is modified, on the law, with costs to plaintiff, by declaring that the agreement between the parties is terminated and defendant shall refund the retainer amount to plaintiff, less defendant's travel expenses and reasonable out-of-pocket expenses, and, as so modified, affirmed.


ENTER:


Robert D. Mayberger
Clerk of the Court